IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| Broadband Communications Association of Pennsylvania, et al., | ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) ) | No. 26-1062 (consolidated with No. 26-1065) |
| Federal Communications Commission, | ) ) | |
| Appellee. | ) | |

**OPPOSITION OF FEDERAL COMMUNICATIONS COMMISSION
TO EMERGENCY PETITIONS FOR WRIT OF MANDAMUS**

Pursuant to this Court's order dated April 28, 2026, the Federal Communications Commission respectfully submits this opposition to the mandamus petitions filed by appellants in this case.

On March 19, 2026, the FCC's Media Bureau approved the transfer of broadcast and other licenses from TEGNA Inc. to Nexstar Media Inc. *Applications for Consent to the Transfer of Control of TEGNA Inc. to Nexstar Media Inc.*, DA 26-267 (Med. Bur. rel. March 19, 2026) (*Order*). The next day, appellants filed with the Commission an emergency application for review of the Media Bureau's *Order*. Shortly thereafter, two different groups of appellants filed separate notices of appeal in this Court seeking judicial review of the *Order*. Each notice requested that if the Court found it lacked jurisdiction to review the Bureau's *Order*, it should alternatively treat the notice as a mandamus petition and "issue a writ of mandamus directing the full Commission to act on Appellants' application for

review and staying the Media Bureau's order pending this Court's review (or directing the FCC to issue a stay)."  Notice of Appeal, No. 26-1062, at 31; *see also* Notice of Appeal, No. 26-1065, at 17.

Appellants maintain that a writ of mandamus is necessary to "preserve" the Court's "ability to meaningfully review" the FCC's approval of the Nexstar-TEGNA merger.  Notice of Appeal, No. 26-1062, at 28.  They contend that "if Nexstar and TEGNA are permitted to continue their ongoing combination process, 'no effective relief will be available'" even if the Court concludes that the FCC unlawfully approved the transaction.  *Id*. at 27 (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 795 (D.C. Cir. 1987)); *see also* Notice of Appeal, No. 26-1065, at 15.

Shortly after these appeals were filed, DIRECTV—which had filed an antitrust lawsuit in federal district court in California—obtained a temporary restraining order barring Nexstar and TEGNA from taking further action to consummate their merger.  The district court in that case subsequently consolidated DIRECTV's lawsuit with a similar suit filed by a number of states, and issued a preliminary injunction prohibiting Nexstar and TEGNA from further integrating their operations pending adjudication of the antitrust claims on the merits.  Given these developments, appellants cannot now demonstrate that they have "a clear and indisputable right" to the extraordinary relief they seek, and the mandamus petitions should be denied.  *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023).

## BACKGROUND

On November 19, 2025, Nexstar and TEGNA filed applications with the FCC's Media Bureau seeking consent to transfer control of TEGNA to Nexstar. *Order* ¶ 8.  The Bureau accepted the applications for filing on December 1, 2025, released a public notice, and established a pleading cycle.  *Order* ¶ 10.  The Bureau received numerous comments, replies, and other submissions, including from the parties to this litigation.  *Order* ¶¶ 11-16.  The pleading cycle officially closed on January 26, 2026.  *See* Public Notice, DA 25-1000 (Med. Bur. rel. Dec. 1, 2025).

"After carefully and thoroughly reviewing the record," the Bureau granted the applications on March 19, 2026.  *Order* ¶ 7.  It concluded that approving the transaction "promotes the FCC's longstanding media policy goals … by allowing the relevant local broadcast TV stations to continue and in fact expand their investments in local news."  *Order* ¶ 2.  It also determined that the transaction would help "to counteract the growing imbalance of power between … local broadcast TV stations … and the powerful Big Four national programmers" (Comcast, Disney, Paramount, and Fox).  *Ibid*.  In addition, the Bureau found that consolidation of Nexstar's and TEGNA's operations would enable their stations "to compete more effectively in the modern media marketplace," *ibid.*, "against streaming services, cable operators, virtual cable operators, and many other digital and traditional distributors of news, content, and information."  *Order* ¶ 66.

In approving the proposed transaction, the Bureau granted a waiver of the FCC's national television ownership rule to permit the merged entity to exceed the rule's national audience reach cap.  *Order* ¶¶ 25-45.  The Bureau also waived the local television ownership rule to allow the merged entity to own more than two television stations in 21 local markets.  *Order* ¶¶ 46-54.  The Bureau found that special circumstances justified these waivers, and that deviation from the rules in this particular case would serve the public interest.  *Order* ¶¶ 42-45, 51-54.

One day after the Bureau issued its *Order*, appellants filed with the Commission an emergency application for review of the *Order* and an emergency petition for stay, requesting a ruling on the stay petition within 24 hours.  The next day, a group of appellants led by the Broadband Communications Association of Pennsylvania filed in this Court a "Notice of Appeal Or, In the Alternative, Emergency Petition For Writ of Mandamus" and "Emergency Motion for Stay and Injunction Pending Appeal."  Later that day, DIRECTV intervened and filed a response.  On March 23, 2026, a second group of appellants led by Free Press filed another notice of appeal or in the alternative, emergency petition for mandamus, accompanied by a separate emergency motion for stay pending appeal.  The Commission filed an opposition to the stay motions on March 26, 2026.

Meanwhile, in an antitrust suit filed in the United States District Court for the Eastern District of California, DIRECTV, joined in a separate suit by a number

of states, moved for a temporary restraining order to block Nexstar and TEGNA from taking additional steps to consummate their merger.  On March 27, 2026, the district court granted the motion and entered a temporary restraining order requiring that TEGNA be held separate from Nexstar.  *DIRECTV, LLC v. Nexstar Media Grp., Inc.*, Order, No. 2:26-cv-00976-TLN-CKD, 2026 WL 851401 (E.D. Cal. March 27, 2026).  The district court subsequently consolidated DIRECTV's suit with that of the states and, following a hearing, issued a preliminary injunction to extend the terms of the temporary restraining order pending a ruling on the merits.  *In re Nexstar-TEGNA Merger Litigation*, Order, No. 2:26-cv-00976-TLN-CKD, 2026 WL 1049295 (E.D. Cal. April 17, 2026).

Nexstar and TEGNA have appealed the district court's preliminary injunction to the Ninth Circuit.  *DIRECTV, LLC v. Nexstar Media Group*, 9th Cir. No. 26-2490 (filed Apr. 21, 2026).  That court has established a briefing schedule according to which Nexstar's opening brief is due May 20, DIRECTV's and the states' answering briefs are due June 17, and any optional reply brief is due 21 days later.  *See* Preliminary Injunction Time Schedule Notice, *DIRECTV, LLC v. Nexstar Media Group*, 9th Cir. No. 26-2490 (April 22, 2026).  The Ninth Circuit has not yet scheduled oral argument.

In an order issued on April 28, 2026, this Court denied the emergency motions for stay pending appeal.  It concluded that appellants had not shown that

5

"this court is likely to have jurisdiction" to review the *Order*.  April 28 Order at 1. The Court noted that the appeals of the Media Bureau's *Order*, which were filed before the Commission had resolved the application for review, were "subject to dismissal as incurably premature" under *International Telecard Association v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam).  On May 5, 2026, the Commission filed a motion to dismiss these appeals.  That motion is pending.

The Court also ordered that the Commission and Nexstar "each file a response to the emergency petitions for a writ of mandamus."  April 28 Order at 2. The Court directed the Commission to state in its response "when it expects to satisfy its nondiscretionary obligation" under 47 U.S.C. § 155(c)(4) "to 'pass[] upon' the pending application for review" of the *Order*.  *Ibid.*  In addition, the Court directed all parties to address how the preliminary injunction in the antitrust case affects appellants' ability to demonstrate the irreparable harm necessary to obtain a stay under the All Writs Act.

## ARGUMENT

Mandamus is a "drastic" remedy that should be invoked "only in extraordinary circumstances."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  It is "an option of last resort, available only if a party lacks adequate alternative remedies."  *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020).  Parties seeking mandamus "must

satisfy the burden of showing that [their] right to issuance of the writ is clear and indisputable." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 381 (2004); *see also Illinois*, 60 F.4th at 713.  Appellants fail to carry that burden.

Appellants urge the Court to enter a stay of the Media Bureau's *Order* under the All Writs Act, 28 U.S.C. § 1651.  They also ask the Court to issue a writ of mandamus directing the FCC "to act expeditiously" on their application for review of the *Order*.  Notice of Appeal, No. 26-1065, at 14.  Neither of these extraordinary remedies is warranted in this case.

## I.      Appellants Are Not Entitled To A Stay Under The All Writs Act

Appellants argue that the Court should order a stay under the All Writs Act to preserve its "ability to meaningfully review" the Media Bureau's approval of the Nexstar-TEGNA transaction.  Notice of Appeal, No. 26-1062, at 28.  This argument rests on the premise that if Nexstar and TEGNA continue to integrate their operations, the merger "could be impossible to unwind after lengthy court proceedings," even if this Court concludes that the FCC acted unlawfully in approving the transaction.  Notice of Appeal, No. 26-1065, at 15; *see also* Notice of Appeal, No. 26-1062, at 27-28.  This concern, however, has been addressed, at least for the foreseeable future, by the preliminary injunction imposed by the district court in the California antitrust litigation.  Under the terms of that

injunction, Nexstar and TEGNA must continue to hold their operations separate until the district court rules on the merits of the antitrust claims.

To be sure, Nexstar and TEGNA have appealed the district court's preliminary injunction to the Ninth Circuit. However, briefing in that appeal will not be completed before late June 2026. *See* Preliminary Injunction Time Schedule Notice, *DIRECTV, LLC v. Nexstar Media Group*, 9th Cir. No. 26-2490 (April 22, 2026). And the Ninth Circuit has yet to schedule oral argument in that case. Thus, even were the Ninth Circuit ultimately to decide to vacate the district court's preliminary injunction, any such decision would not likely be issued before well into the fall of 2026. In the meantime, the injunction remains in effect, prohibiting Nexstar and TEGNA from further integration of their operations.

Consequently, appellants cannot now demonstrate that a stay under the All Writs Act is warranted. As the Court noted in its April 28 order, appellants cannot obtain a stay unless they show "irreparable harm in the absence of a stay." April 28 Order at 2 (quoting *In re NTE Conn., LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022)); *see also Reynolds Metals Co. v. FERC*, 777 F.2d 760, 762-63 (D.C. Cir. 1985). Appellants cannot possibly make that showing because a stay is already in place. The preliminary injunction in the antitrust litigation prevents precisely the sort of irreparable harm that appellants allege: the likelihood that by taking further steps to complete their merger, Nexstar and TEGNA will impede this Court's ability to

provide effective relief in the event it rules that the FCC's approval of the transaction was unlawful.  Because appellants cannot demonstrate any imminent irreparable harm, the Court should deny their request for a stay under the All Writs Act.

Even if appellants could show irreparable harm, they would not be entitled to a stay because they have not satisfied any of the other stringent requirements for a stay.  As the Commission explained in its opposition to their stay motions, appellants have not shown that they are likely to succeed on the merits.  FCC Opposition to Stay Motions, March 26, 2026, at 9-21.  Contrary to appellants' claims, as we have shown, (1) the Media Bureau had authority to waive the national television ownership rule, *see id*. at 9-14; (2) the Bureau reasonably explained why waiver of that rule and the local television ownership rule were justified under the circumstances, *id*. at 14-18; and (3) the Bureau reasonably determined that Nexstar's and TEGNA's applications did not have to be designated for hearing, *id*. at 18-21.  Finally, the equities and the public interest clearly weigh against a stay.  *Id*. at 23-24.

## II.    Appellants Are Not Entitled To A Writ Of Mandamus Directing The FCC To Act Expeditiously

Appellants have also failed to justify their request for a writ of mandamus directing the FCC "to act expeditiously" on the application for review of the Bureau's *Order*.  Notice of Appeal, No. 26-1065, at 14.  While the

9

Communications Act provides that the Commission "shall … pass[] upon" an application for review, *see* 47 U.S.C. § 155(c)(4), the Act does not require the agency to issue a ruling by a certain date or within a particular timeframe.  This Court has long recognized that "'[a]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable' of its proceedings 'is entitled to considerable deference.'"  *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Sierra Club*, 828 F.2d at 797); *see also Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983).  Indeed, as this Court has recognized, the Communications Act expressly empowers the FCC with "broad authority to 'conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice.'"  *China Telecom (Americas) Corp. v. FCC*, 57 F.4th 256, 268 (D.C. Cir. 2022) (quoting 47 U.S.C. § 154(j)).

Appellants assert that a writ directing the FCC to act promptly is necessary in this case to ensure that the agency will rule on the application for review before the consolidation of Nexstar's and TEGNA's operations renders appellants' right to judicial review "illusory."  Notice of Appeal, No. 26-1065, at 15.  But the preliminary injunction in the California antitrust litigation ensures that Nexstar and TEGNA cannot consummate their merger anytime soon.  Therefore, there is no

need for the Court to issue a writ directing the Commission to act on an expedited timeline.

The Court rarely issues a writ of mandamus imposing a deadline for agency action. Such an extraordinary remedy is reserved for extreme cases involving "egregious" agency delay. *See In re Ctr. for Biological Diversity*, 53 F.4th 665, 670-71 (D.C. Cir. 2022). The Commission's failure thus far to act on appellants' application for review—which was filed less than two months ago—is by no measure "egregious." Even in mandamus cases involving protracted delay, "[a]ny discussion of the standards relevant to the issue of delay must begin with recognition that an administrative agency is entitled to considerable deference in establishing a timetable for completing its proceedings." *Cutler v. Hayes*, 818 F.2d 879, 896 (D.C. Cir. 1987).

"[T]his court has upheld in the strongest terms the discretion of regulatory agencies to control the disposition of their caseload." *GTE Serv. Corp. v. FCC*, 782 F.2d 263, 273 (D.C. Cir. 1986) (quoting *Nader v. FCC*, 520 F.2d 182, 195 (D.C. Cir. 1975)). Particularly where (as here) "Congress has not spoken to the issue" of a timetable for agency action, the Court gives "considerable deference to an agency's control over timelines" so as not to "intrude upon [the agency's] ability to allocate resources." *Gillan v. Winter*, 474 F.3d 813, 819 (D.C. Cir. 2007). Even in a case where agency inaction violated a statutory deadline, the Court declined to

11

issue a writ of mandamus directing the FDA to act expeditiously on a particular application. *In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991). Given the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way," the Court found that it had "no basis for reordering agency priorities" by imposing a deadline on the agency. *Id.* at 76.

For the same reasons, the Court in this case should deny appellants' request for a writ directing the FCC to act on their application for review within a specific timeframe. Appellants have given the Court no good reason to take this extraordinary step, which would mark a dramatic departure from the Court's typically deferential approach toward an agency's management of its own limited resources.

Nevertheless, the Court has directed the Commission to state when it expects to "pass[] upon" appellants' application for review. April 28 Order at 2 (quoting 47 U.S.C. § 155(c)(4)). We are authorized to represent that the application for review of the Media Bureau's *Order* is now under active consideration. In its evaluation of that application, the Commission is weighing all relevant considerations, including the effect of the hold-separate order adopted by the preliminary injunction in *In re Nexstar-TEGNA Merger Litigation*, No. 26-cv-976, 2026 WL 1049295 (E.D. Cal. Apr. 17, 2026), *appeal docketed*, No. 26-2490 (9th Cir. Apr.

21, 2026), as well as the record submitted in the rulemaking that is examining whether the national television audience reach cap (which the Media Bureau waived in the order at issue here) should be modified or eliminated, *Amendment of Section 73.3555(e) of the Commission's Rules*, MB Docket No. 17-318.  Taking those proceedings into account, the Commission expects that it will be able to act on the application for review this year.

## CONCLUSION

The Court should deny the emergency petitions for writ of mandamus.

<div style="margin-left:auto">

Respectfully submitted,


D. Adam Candeub
General Counsel


Jacob M. Lewis
Associate General Counsel


/s/James M. Carr

James M. Carr
William J. Scher
Counsel

Federal Communications Commission
Washington, DC  20554
(202) 418-1740

</div>

May 11, 2026

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒    this document contains <u>2,883</u> words, *or*

    ☐    this document uses a monospaced typeface and contains _ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒    this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐    this document has been prepared in a monospaced spaced typeface using _____ with _____ .


*/s/ James M. Carr*

James M. Carr
 *Counsel*

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740

**CERTIFICATE OF FILING AND SERVICE**

I, James M. Carr, hereby certify that on May 11, 2026, I filed the foregoing Opposition of Federal Communications Commission to Emergency Petitions for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
 *Counsel*

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740