**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 26-1062**

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

BROADBAND COMMUNICATIONS ASSOCIATION OF PENNSYLVANIA; BROADBAND COMMUNICATIONS ASSOCIATION OF WASHINGTON; INDIANA CABLE AND BROADBAND ASSOCIATION; MISSISSIPPI INTERNET AND TELEVISION; TENNESSEE CABLE & BROADBAND ASSOCIATION; VCTA – BROADBAND ASSOCIATION OF VIRGINIA; and NEWSMAX MEDIA INC.,

*Appellants/Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION,

*Appellee/Respondent*.

———————————

On Notice of Appeal from/Petition for Writ of Mandamus to
the Federal Communications Commission
(MB Docket No. 25-331)

———————————

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

———————————

JONATHAN A. FRIEDMAN
MICHAEL D. HURWITZ
SAMUEL H. ECKLAND
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006

PAUL D. CLEMENT
JAMES Y. XI
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Appellants/Petitioners Broadband Communications Association of Pennsylvania; Broadband Communications Association of Washington; Indiana Cable and Broadband Association; Mississippi Internet and Television; Tennessee Cable & Broadband Association, and VCTA – Broadband Association of Virginia*
*(Additional Counsel Listed on Inside Cover)*

May 29, 2026

MARK I. BAILEN P.C.
BAILEN LAW
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Appellant/Petitioner Newsmax Media Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................... ii

GLOSSARY OF ABBREVIATIONS ........................................................................ v

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.     This Court Has Appellate Jurisdiction Under The Plain Meaning Of
47 U.S.C. §155(c)(7) ..................................................................................... 2

II.    Precedent Supports Exercising Appellate Jurisdiction Here .......................... 8

III.   If The Court Does Not Exercise Appellate Jurisdiction, Mandamus
Is Imperative .................................................................................................11

CONCLUSION ....................................................................................................... 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**Cases**

*Am. Mail Line v. FMC*,
  503 F.2d 157 (D.C. Cir. 1974) ...................................................................11

*Blue Ridge Env't Def. League v. NRC*,
  668 F.3d 747 (D.C. Cir. 2012) ..................................................................11

*Centro de Trabajadores Unidos v. Bessent*,
  167 F.4th 1218 (D.C. Cir. 2026) .................................................................5

*Ciba-Geigy Corp. v. EPA*,
  801 F.2d 430 (D.C. Cir. 1986) ....................................................................2

*Clifton Power Corp. v. FERC*,
  294 F.3d 108 (D.C. Cir. 2002) ..................................................................10

*Ctr. for Biological Diversity v. Zeldin*,
  171 F.4th 356 (D.C. Cir. 2026) ...................................................................5

*Friedman v. FAA*,
  841 F.3d 537 (D.C. Cir. 2016) .............................................................10, 11

*Garland v. Ming Dai*,
  593 U.S. 357 (2021) .....................................................................................5

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
  467 U.S. 51 (1984) .......................................................................................7

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428 (2011) .....................................................................................9

*Holland v. Florida*,
  560 U.S. 631 (2010) .....................................................................................7

*Illinois v. Ferriero*,
  60 F.4th 704 (D.C. Cir. 2013) ...................................................................12

*In re NTE Conn., LLC*,
  26 F.4th 980 (D.C. Cir. 2022) ...................................................................13

ii

*Int'l Telecard Ass'n v. FCC*,
    166 F.3d 387 (D.C. Cir. 1999) ..................................................... 5, 8, 9

*Menominee Indian Tribe v. United States*,
    764 F.3d 51 (D.C. Cir. 2014) ...................................................6

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
    598 U.S. 288 (2023) ..................................................5

*NTCH, Inc. v. FCC*,
    877 F.3d 408 (D.C. Cir. 2017) ...................................................8

*Prometheus Radio Project v. FCC*,
    2003 WL 22052896 (3d Cir. 2003) ...................................................11

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) ...................................................9

*Richman Bros. Recs. v. FCC*,
    124 F.3d 1302 (D.C. Cir. 1997) ...................................................8

*Santos-Zacaria v. Garland*,
    598 U.S. 411 (2023) ...................................................5

*Sierra Club v. Thomas*,
    828 F.2d 783 (D.C. Cir. 1987) ...................................................13

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994) ...................................................9

*United States v. Nixon*,
    418 U.S. 683 (1974) ...................................................8

*United States v. Three Sums Totaling $612,168.23*,
    55 F.4th 932 (D.C. Cir. 2022) ...................................................6

**Statutes**

28 U.S.C. §2101(e) ...................................................8

47 U.S.C. §155(c)(3) ...................................................1, 2

47 U.S.C. §155(c)(4) ...................................................12

iii

47 U.S.C. §155(c)(7)........................................................................... 1, 2, 4

47 U.S.C. §155(d) ....................................................................................3

47 U.S.C. §219(b) ....................................................................................3

47 U.S.C. §402(b)(6)................................................................................2

47 U.S.C. §536 .........................................................................................3

47 U.S.C. §618(a) ....................................................................................3

**Other Authority**

Oxford English Dictionary (3d ed. 2023) ................................................3

# GLOSSARY OF ABBREVIATIONS

| <u>Abbreviation</u> | <u>Definition</u> |
|---|---|
| AFR | Application for Review |
| DIRECTV.Opp. | DIRECTV, LLC's opposition to FCC's Motion to Dismiss, Case No. 26-1062 (filed May 29, 2026) |
| FCC | The Federal Communications Commission |
| FCC.Mandamus.Opp. | Opposition of FCC to Emergency Petitions for Writ of Mandamus, Case Nos. 26-1062 & 26-1065 (filed May 11, 2026) |
| Mot. | Motion to Dismiss Appeals and to Defer Filing of the Record, Case Nos. 26-1062 & 26-1065 (filed May 5, 2026) |
| NOA | Notice of Appeal or, in the Alternative, Emergency Petition for Writ of Mandamus, Case No. 26-1062 (filed Mar. 21, 2026) |

**INTRODUCTION**

Everyone agrees that 47 U.S.C. §402(b) gives Appellants the right to appeal FCC orders approving station license transfers. Everyone also agrees that §402(b) vests this Court with exclusive jurisdiction over those appeals. And everyone further agrees that, when the Media Bureau stands in the Commission's shoes and issues an order approving a station license transfer on delegated authority, the "[t]he filing of an application for review" (AFR) with the full Commission is "a condition precedent to judicial review." 47 U.S.C. §155(c)(7).

Appellants read those provisions as supplying a sure and timely route to judicial review that constrains abuse of agency authority. But where Appellants see constraints, FCC sees opportunity. According to FCC, when the Media Bureau acts, the "filing of an [AFR]" does not suffice to clear the way for judicial review, and instead judicial review must await the Chair's decision to act on an AFR. As this case dramatically illustrates, FCC's view allows the Chair to delegate authority to the Media Bureau and instruct the unaccountable bureaucrats there to greenlight a multibillion merger, with the same immediate "force and effect" as if it came from the full Commission, *id.* §155(c)(3), and then delay judicial review indefinitely unless and until the Chair schedules a vote on an AFR—even if meaningful relief becomes impossible in the meantime. That reading of §155(c)(7) effectively—and absurdly—gives an FCC Chair unchecked power not just to evade Congress' design

and this Court's exclusive jurisdiction, but to ensure that an appeal to this Court becomes moot before it ever becomes ripe.

Unsurprisingly, neither the statutory text nor this Court's "practical common sense" approach to ripeness requires that result. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 434 (D.C. Cir. 1986). Moreover, this case well illustrates that if this agency power to delay judicial review exists, it will be abused, as FCC refuses to promise action on Petitioners' AFR any time before year's end. Instead of granting FCC's request to transform a statutory check into a font of unchecked power, this Court should enforce the statute Congress wrote and deny FCC's motion to dismiss, or at a minimum, grant Appellants' pending request for mandamus relief, and set a briefing schedule facilitating orderly resolution of Appellants' appeal by fall 2026.

## ARGUMENT

### I.   This Court Has Appellate Jurisdiction Under The Plain Meaning Of 47 U.S.C. §155(c)(7).

A. When the Media Bureau exercises its delegated authority and grants an application to transfer a station license, it is undisputed that the resulting order "ha[s] the same force and effect" as an order from the full Commission, 47 U.S.C. §155(c)(3); that entities "adversely affected" ultimately have a right to appeal to this Court, *id.* §402(b)(6); and that the only prerequisite on the face of the statute is "[t]he filing of an" AFR, *id.* §155(c)(7). As a matter of ordinary meaning, that prerequisite is satisfied as soon as the adversely affected entity "place[s]" the AFR "in a due

2

manner among the records of a court or public office." *File*, Oxford English Dictionary (3d ed. 2023). That ordinary meaning is consistent with how Congress used the word "filing" throughout Title 47. *See, e.g.*, 47 U.S.C. §219(b) (setting time "for making and filing" of annual reports); *id.* §618(a) (directing FCC to "establish regulations that facilitate the filing of formal and informal complaints"); *id.* §536 (authorizing "penalties to be assessed against any person filing a frivolous complaint"). It also stands in stark contrast to the alternate language Congress uses when it wants to refer not just to the initiation of an agency proceeding, but its resolution—as Congress did in a neighboring portion of §155, which uses "filing" in its ordinary meaning in contradistinction from "rendering a final decision." *See id.* §155(d) (tasking FCC "with the objective of rendering a final decision … within three months from the date of filing in all original application, renewal, and transfer cases in which it will not be necessary to hold a hearing").

Applying the ordinary statutory-interpretation rules to §155(c)(7)'s unambiguous text leads to the straightforward conclusion that "filing" means "filing" and thus Appellants' right to judicial review became ripe on March 20—*i.e.*, the day they filed their AFR. Indeed, there is zero dispute that Appellants fully complied with all applicable FCC rules regarding the proper lodging and service of an AFR on that date. So under the plain meaning of §155(c)(7), there is only one

3

prerequisite for this Court to have appellate jurisdiction, and Appellants cleared it over two months ago.

B.  Despite acknowledging that Appellants *filed* their AFR over two months ago, FCC takes the position that this appeal remains incurably premature, because FCC has not *resolved* the AFR.  As FCC tacitly admits (at 6), nothing in the statutory text compels that result.  Instead, FCC asks this Court to infer an additional limit on judicial review out of a different portion of §155(c)(7) that expands the deadline for judicial review.  *See* 47 U.S.C. §155(c)(7) ("The time … within which an appeal must be taken … shall be computed from the date upon which public notice is given of orders disposing of all applications for review filed in any case.").

That backwards effort to turn a liberalization of a deadline into an obstacle to judicial review is a non-starter under ordinary statutory-interpretation principles. The fact that Congress gave the aggrieved party the option of deferring judicial review until after the resolution of the AFR, while no doubt providing the preferred path when the agency acts responsibly to stay the immediate effect of the Bureau order, in no way deprives the aggrieved party of its right to judicial review when the agency engages in the kind of gamesmanship displayed here.  *See also* DIRECTV.Opp.9-11 (further suggesting that §155(c)(3) can be read to automatically stay Media Bureau orders upon filing of an AFR).  And more generally, "it is long since settled that a reviewing court is 'generally not free to impose' additional judge-

4

made procedural requirements … that Congress has not prescribed." *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021); *see also Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1231 (D.C. Cir. 2026) ("Congress did not add additional requirements, and we will not write any in."); *Ctr. for Biological Diversity v. Zeldin*, 171 F.4th 356, 406 (D.C. Cir. 2026) (Henderson, J., concurring in part) ("We should not erect additional barriers beyond those prescribed by law.").

Moreover, even if this Court could fashion an additional implied "threshold requirement[] that" adversely affected entities "must complete, or exhaust, before" lodging an appeal, a series of recent Supreme Court cases has clarified that such a prerequisite would plainly be "a quintessential claim-processing rule," "not" a "jurisdictional" requirement. *Santos-Zacaria v. Garland*, 598 U.S. 411, 417 (2023); *see also infra* Section II.A (discussing *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam)). That is all the more because, unlike the first sentence of §155(c)(7), which uses the words "shall" and "condition precedent" and thus concededly delimits this Court's jurisdiction, the final sentence of §155(c)(7) provides only an outside time limit and bears no such jurisdictional hallmarks. The contrast underscores that Congress knows how to use jurisdictional language when it wants to. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023). In short, FCC's motion to dismiss offers no principled textual basis to

conclude that §155(c)(7) requires an adversely affected entity to wait for a resolution to its AFR, much less that this Court's appellate jurisdiction depends on it.

C. Even assuming *arguendo* that §155(c)(7) includes an implied claims-processing rule that generally requires an adversely affected entity to wait for a resolution to its AFR before appealing (especially when the agency acts responsibly to stay the effect of a Bureau order pending full Commission review), that rule—unlike an express jurisdictional requirement—would "not implicate" this Court's "authority to adjudicate cases," and would remain "subject to equitable exceptions" (including for circumstances like this where the agency refuses to either stay the effect of the Bureau order or expedite resolution of the AFR). *United States v. Three Sums Totaling $612,168.23*, 55 F.4th 932, 937-38 & n.4 (D.C. Cir. 2022). Every exception in the book favors recognizing an equitable exception to the implied claims-processing rule and exercising appellate jurisdiction here. Equitable tolling, for one, applies when a party "pursu[ed its] rights diligently," but "some extraordinary circumstance stood in [its] way and prevented" strict compliance with the claims-processing rule. *Menominee Indian Tribe v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014). That describes Appellants to a T, who have been exceptionally prompt in pursuing their rights to judicial review, but have run aground on FCC's complete noninterest in ruling on their AFR, even (or perhaps especially) while the merging parties rush to close. If equitable tolling exists "to 'relieve hardships which,

from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity,'" then it most certainly applies here. *Holland v. Florida*, 560 U.S. 631, 650 (2010).

Or consider equitable estoppel, which prevents "[a] defendant who engages in 'inequitable conduct'" to frustrate a plaintiff's compliance with a claims-processing rule from later invoking that claims-processing rule to keep the plaintiff out of court. Inequitable conduct abounds here, but perhaps the most striking is FCC's belt-and-suspenders effort to moot judicial review (through backdoor coordination with the merging parties to facilitate snap-closure of the largest broadcast merger in history), and if not, then to stall it (by keeping Appellants' AFR in limbo for months after rushing the Media Bureau to "GET THAT DEAL DONE!," NOA.15). That extraordinary conduct mocks the fundamental "interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with the[] Government," making this the paradigmatic example of when a court should equitably estop FCC from relying on an implied claims-processing rule. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60-61 (1984).

Finally, it bears emphasis that applying the statute in this manner brings coherence to the overall statutory regime. While it makes little sense to exercise appellate jurisdiction when the matter is on appeal before the agency and the agency has stayed the effect of the Bureau order, it makes even less sense to allow the agency

7

to defeat judicial review by refusing to stay the effect of a Bureau order while indefinitely withholding its own internal review.  Deeming the final sentence of §155(c)(7) as jurisdictional despite its plain text creates a jurisdictional gap that could facilitate all manner of gamesmanship and frustrates both judicial review and this Court's exclusive jurisdiction, as this case vividly illustrates.  By contrast, treating it as a claims-processing rule avoids premature judicial review and the wasting of judicial resources while incentivizing the agency to behave responsibly and stay the effect of consequential Bureau orders pending full Commission review.[1]

## II.    Precedent Supports Exercising Appellate Jurisdiction Here.

A. Appellants acknowledge, as they did in their notice of appeal, that *International Telecard Association v. FCC* appears to endorse FCC's implied-prerequisite theory by holding that "the act of filing a request for Commission review" is not generally "sufficient to satisfy the judicial review prerequisites of §155(c)(7)."  166 F.3d at 388; *see* NOA.25-26.  But nothing in *International Telecard* (or any other case[2]) clearly marks that implied prerequisite a strict jurisdictional rule

---

[1] In that way, §155(c)(7) functions much like the Supreme Court's familiar certiorari jurisdiction under 28 U.S.C. §1254, which technically allows for certiorari before judgment in extraordinary cases once a notice of appeal has been filed in the court of appeals.  Although the Court generally favors allowing the ordinary appellate process to run its course, it nonetheless retains formal jurisdiction to intervene as soon as a notice of appeal is filed.  *See United States v. Nixon*, 418 U.S. 683, 692 (1974); *see also* 28 U.S.C. §2101(e).

[2] *NTCH, Inc. v. FCC*, 877 F.3d 408 (D.C. Cir. 2017), and *Richman Bros. Records v. FCC*, 124 F.3d 1302 (D.C. Cir. 1997), lend FCC no support:  This Court declined

rather than a claims-processing rule, especially because *International Telecard* assiduously avoids using the word "jurisdiction" in its analysis. *See* 166 F.3d at 388 ("expressly hold[ing]" only "that a petition for review filed after a Bureau decision but before resolution by the full Commission is *subject* to dismissal" (emphasis added)). Moreover, a host of Supreme Court decisions that post-date *International Telecard* have underscored the important difference between (relatively scarce) true jurisdictional requirements and (more common) claims-processing rules. *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) ("Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term."). Under those circumstances, this Court should not treat a one-page *per curiam* decision denying a request for panel rehearing of an unpublished opinion as definitively converting the permissive language of the last sentence of §155(c)(7) into an inflexible jurisdictional prerequisite. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) ("Our recent cases evince a marked desire to curtail such 'drive-by jurisdictional rulings,' which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action."); *see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994)

---

to exercise appellate jurisdiction in those cases precisely because those appellants failed to satisfy the concededly jurisdictional prerequisite of filing an AFR.

(cautioning against overreading "*per curiam* dispositions that lack the reasoned consideration of a full opinion").[3]

B. Nor do the practical challenges of "review[ing] a staff decision that has not been adopted by the Commission itself" justify foreswearing review in cases where the agency allows the Bureau decision to take full force and effect while it takes its sweet time in processing a timely filed AFR. *Contra* Mot.6. As noted, in most cases, and especially when the agency acts responsibly to stay the immediate effect of the Bureau decision, it makes perfect sense to wait and see if a "favorable decision from the agency might yet obviate the need for review by the Court." *Clifton Power Corp. v. FERC*, 294 F.3d 108, 111-12 (D.C. Cir. 2002). But when the agency simultaneously allows the Bureau decision to take immediate effect and slow rolls both a stay request and resolution of the AFR, delaying judicial review makes no sense. That is consistent with this Court's "pragmatic and flexible" approach to finality questions more generally, in order "to ensure justice" in cases like this one, when an agency appears to be attempting "to avoid judicial review by holding out a vague prospect of reconsideration." *Friedman v. FAA*, 841 F.3d 537, 543 (D.C. Cir. 2016). The question in those cases "is not whether there are further administrative

---

[3] To the extent FCC and others ascribe that jurisdictional effect to *International Telecard*, *e.g.*, Mot.5, Appellants respectfully renew their request for an *Irons* footnote "to avoid future confusion," NOA.26.n.2.

proceedings available," but rather whether the agency's "actions suggest the [agency] has made up its mind," such that "the order is sufficiently 'final' to warrant review in the context of the particular case." *Id.* at 542-43; *accord* NOA.22-25; *see also Blue Ridge Env't Def. League v. NRC*, 668 F.3d 747, 753 (D.C. Cir. 2012). It is hard to imagine a more apt description of the Media Bureau's order here, which had (quite literally) immediate and potentially irreversible real-world impact, *see Am. Mail Line v. FMC*, 503 F.2d 157, 170 (D.C. Cir. 1974), and which two of the three Commissioners are evidently content to leave in place while that real-world impact plays out in real time and in full view (subject to the vagaries of litigation in other fora). *Cf.* NOA.16-17 (quoting Commissioner Gomez's dissenting statements, which attribute approval of the merger to "the FCC" as a whole). In these "unique circumstances," it is "virtually certain that" the Bureau order is formally final, *Prometheus Radio Project v. FCC*, 2003 WL 22052896, at *1 n.2 (3d Cir. 2003)— and even more certain that it will be functionally final if the Commission does not accelerate its expected timing to rule on Appellants' AFR.

## III. If The Court Does Not Exercise Appellate Jurisdiction, Mandamus Is Imperative.

Notwithstanding the above, to the extent this Court is inclined to grant FCC's motion to dismiss, that would only heighten the need for relief on Appellants' pending mandamus petition. If FCC really is the gatekeeper of this Court's appellate jurisdiction, then mandamus is not only appropriate, but imperative, as Appellants

11

truly have "no adequate alternate" mechanism to protect their statutory right to judicial review. *Illinois v. Ferriero*, 60 F.4th 704, 713-14 (D.C. Cir. 2023). The statutory scheme, at a minimum, assumes that the agency will not allow consequential Bureau-level decisions to take immediate effect (and inflict irreparable harm) without issuing a stay or expeditiously resolving the AFR. If the agency refuses to do so—and frustrates this Court's exclusive jurisdiction and meaningful judicial review—then the only proper course is for this Court to issue mandamus forcing the agency to take the actions necessary to protect this Court's jurisdiction. There is no disputing that Appellants have a clear right to a ruling on their AFR, *see* 47 U.S.C. §155(c)(4) ("every such application shall be passed upon by the Commission"), and even less dispute that, months into this case, FCC remains in "transparent violation[]" of that duty. *Illinois*, 60 F.4th at 714-15. Not only that, FCC is quite candid that it intends to continue flagrantly violating this duty for months to come. FCC.Mandamus.Opp.12-13. That course has nothing to recommend it.

It would be passing strange for Congress to go to the trouble of giving Appellants a right to judicial review and vesting this Court with exclusive jurisdiction only to leave it to FCC's sole discretion whether to delay that judicial review indefinitely while the parties suffer irreparable harm even to the point where judicial review in this Circuit becomes completely ineffectual or is overtaken by

events in other circuits.  That does not seem like a sensible construction of the statute, *see supra* Part I, but any such reading of the statute would presuppose the ability of this Court to use mandamus to prevent the kind of abuse (and circumvention of this Court's exclusive jurisdiction) that is transpiring here.

Appellants have complied with all the textual prerequisites for this Court to have appellate jurisdiction, and this Court's precedents do not require more.  But regardless of whether the Court prefers to act through its appellate jurisdiction, its mandamus authority, or some combination of the two, the most important thing is for this Court to "preserve its prospective jurisdiction" and protect Appellants' statutory right to judicial review by granting relief that facilitates orderly review by fall 2026 while ensuring that the parties do not rush to finish integrating in the meantime.  *In re NTE Conn., LLC*, 26 F.4th 980, 987 (D.C. Cir. 2022); *see Sierra Club v. Thomas*, 828 F.2d 783, 795-97 (D.C. Cir. 1987).

# CONCLUSION

The Court should deny FCC's motion to dismiss, or at a minimum, grant Appellants' pending request for mandamus relief, and set a briefing schedule facilitating orderly resolution of Appellants' appeal by fall 2026.

Respectfully submitted,

s/Paul D. Clement

JONATHAN A. FRIEDMAN
MICHAEL D. HURWITZ
SAMUEL H. ECKLAND
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006

PAUL D. CLEMENT
JAMES Y. XI
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Appellants/Petitioners Broadband Communications Association of Pennsylvania; Broadband Communications Association of Washington; Indiana Cable and Broadband Association; Mississippi Internet and Television; Tennessee Cable & Broadband Association, and VCTA – Broadband Association of Virginia*

MARK I. BAILEN P.C.
BAILEN LAW
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Appellant/Petitioner Newsmax Media Inc.*

May 29, 2026

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and D.C. Circuit Rule 32(e) because it contains 3195 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(a)(1).

2. This brief complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

May 29, 2026

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I certify that, on May 29, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system and by email to the Clerk of Court.

s/Paul D. Clement
Paul D. Clement